The Vice-Chancellor.
The defendant Conklin was justifiable in relying upon receiving information from Mr. E. H. Seely, as to the time of the sale. The circumstance that he attempted to induce Mr. Hoppock and the Messrs. Seely to protect him at the sale, does not detract from the position that he intended to give to it his personal attention; nor does his own statement, that he understood and believed Mr. H. would bid the requisite amount.
Mr. E. H. Seely informed Conklin of the sale, in fulfilment of his promise and in perfect good faith. His letter would have been in time, but for an occurrence against which no foresight of Conklin’s could guard, and which it was wholly out of his power to remedy.
I have no doubt that the first time he knew of the letter, was in the evening of Monday the 25th of January. It was not in season for him to consider or decide on the proper measures to be pursued, either in time for the mail to New York on the ensuing day, or to despatch a messenger the next morning. He thought the judge would relieve him from the jury, so that he could attend the sale in person, and this could not be ascertained till the court convened on Tuesday. He was not bound to know, nor is it reasonable to suppose he knew, that the judge could not discharge him from the trial then pending.
On learning this on the 26th January, he wrote through his son by the mail, to a proper person and one competent in point of means, to attend the sale. The letter in due course would have reached St. John, in time to have enabled him to be present at the sale ; but through another mishap it did not come to his hands till after the hour when the sale took place.
*586 It is objected that Conklin should, have sent his son, instead of sending a letter. I do not think he was bound to use such a great degree of diligence, under the circumstances. The property was worth more than the mortgage debt. Although Mr. Hoppock did not intend to give an assurance that he would bid to the amount of the debt, yet it is obvious that his conversation, as well as that of the Messrs. Seely, had the effect to confirm Conklin’s belief, that the property would under any circumstances relieve his liability, and to disarm the extreme vigilance which he might otherwise have felt impelled to exercise for his own protection. Mr. E. H. Seely’s letter, corroborated Conklin’s views derived from those interviews and from the intrinsic value of the mortgaged premises.
The complainants under this state of facts, had no right to require from Conklin, any more than ordinary prudence and diligence, in providing for his interests in the sale. It is clear that he used as much diligence as was reasonably practicable, in the condition in which he was placed, when the letter from Mr. Seely reached him. And thus, without any fault on his part, through a concurrence of accidental causes, he was prevented from being represented at the sale; the property was sold to the complainants for about one third of its value; and Conklin became chargeable with a deficiency on his bond, exceeding the whole sum bid at the sale.
The case comes within the well established and benign principles on which this court relieves against sales made under its decrees. It is a much stronger case than Collier v. Whipple, 13 Wend. 224; and Tripp v. Cook, 26 Wend. 143, is a clear authority for granting the relief sought.
The complainants, holding the mortgage as executors, were perfectly right, in declining to relinquish the purchase. Such an act would have been at the peril of proving at some future day, that the facts were such as entitled Conklin to have a resale. They must therefore be paid their costs, and the counsel fees incurred on this application, and protected in the acts done by them under their deed of the premises.
There must be an order for a re-sale of the premises. The master will expose them for sale, at the amount of the debt, in *587 terest, taxed costs of suit and his own costs on the former sale. If any bidder take the property at that or a greater sum, the former sale will be vacated, and the complainants will release to the new purchaser. Out of the proceeds, the master will pay the foregoing costs and charges on this motion, the costs of suit and of both sales, and then the debt and interest. The surplus, if any to be brought into court.
As to Mrs. Wyckoff’s motion, I doubt whether it could be granted. The decision on Conklin’s application has rendered it unimportant, and as the complainants are put to but little additional costs on her motion, I will dispose of it by dismissing it, and directing the complainants of opposing the motion, to be paid with those before mentioned, out of the proceeds of the resale. Or if there be no re-sale, they must be paid by Mrs. Wyckoff.
In case no bidder will take the property at the price at which the master offers it, the motion of Conklin will be thenceforth denied with costs to be taxed, including the master’s costs and charges of proceeding to sell anew.